# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50046

| | | |
|---|---|---|
| In the Interest of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: December 8, 2022 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| JANE DOE (2022-37), | ) ) ) | |
| Respondent-Appellate. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John B. Lothspeich, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Rockne K. Lammers; Jerome, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

Williams, Meservy & Larsen, LLP; Theodore R. Larsen, Jerome, for Guardian Ad Litem.

---

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe alleges the magistrate court erred in finding that she neglected the minor children and termination of her parental rights is in their best interests. The magistrate court's finding that Doe neglected the children is affirmed on the uncontested basis and substantial and competent evidence supports the court's finding that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological mother of B.G. and L.W. Both Doe and L.W. tested positive for methamphetamine and amphetamine at the time of L.W.'s birth. Given L.W.'s status, the Idaho Department of Health and Welfare (Department) took L.W. into care and shortly thereafter, also took B.G. into care. After two shelter care hearings, the magistrate court granted the Department temporary custody of the children and ordered a case plan for Doe as part of reunification efforts.

The State filed a petition to terminate Doe's parental rights to the children. After a two-day trial, the magistrate court found Doe neglected the children and termination of Doe's parental rights is in the best interests of the children.[1] Accordingly, the magistrate court entered a judgment terminating Doe's parental rights to the children. Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

---

[1] Father's parental rights were also terminated but are not the subject of this appeal.

## ANALYSIS

Doe alleges the magistrate court erred in terminating her parental rights to the children because it erroneously found that she neglected the children and termination of her parental rights is in their best interests. In response, the State argues the magistrate court did not err.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### A. The Magistrate Court Did Not Err in Finding Doe Neglected the Children

Doe alleges the magistrate court erred in finding that she neglected the children because she "loves her children" and "substantially completed" her case plan. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control,

or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found alternate statutory bases for terminating Doe's parental rights. The magistrate court found that Doe neglected the children by failing to comply with the terms of her case plan. The magistrate court also found that Doe neglected the children through her drug use, her failure to provide any child support during the proceedings, and her failure to consistently participate in visitation.[2] On appeal, Doe only challenges the magistrate court's finding of neglect by failing to comply with the terms of her case plan. Doe does not challenge the magistrate court's conclusion that she neglected the children for reasons other than complying with her case plan. Where a lower court makes a ruling based on alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested bases. *Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015). Accordingly, we affirm the magistrate court's finding of neglect on the uncontested bases.

**B.     The Magistrate Court Did Not Err in Finding Termination of Doe's Parental Rights Is in the Best Interests of the Children**

Doe argues that she has many "positive attributes" that "should strongly have been weighed in favor" of not terminating her parental rights and "[o]nce all of the evidence is considered, there is not substantial and competent evidence to support the magistrate court's finding that termination was in the best interests of the child(ren)." As previously articulated, our review is limited to whether substantial and competent evidence supports the magistrate court's decision and further, we will not reweigh the evidence presented at the termination trial. *See State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (holding trial courts have unique ability to weigh evidence

---

[2]     We note that the magistrate court does not explicitly identify how each of these bases constitute neglect pursuant to Idaho Code § 16-1602(31)(a). Nonetheless, because each of the bases could constitute neglect pursuant to I.C. § 16-1602(31)(a) and because Doe does not challenge any of these alternate grounds as a basis for a statutory finding of neglect, we need not further address the lack of specificity.

4

and take entire situation into account). Accordingly, to the extent this is a request that we reweigh the evidence presented at the termination trial, we decline to do so. However, to the extent that Doe argues that substantial and competent evidence does not support the magistrate court's finding that termination of her parental rights is in the best interests of the children, we disagree.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found termination of Doe's parental rights is in the best interests of the children because the children showed significant improvements while in foster care; needed a safe, stable, drug-free, and permanent home; and could not wait any longer for Doe to prove herself capable of providing this level of care. The magistrate court acknowledged Doe's genuine love and affection for the children, but found Doe was unable to translate her love into being a clean, capable, and responsible parent. These findings are supported by substantial and competent evidence.

First, several witnesses testified that the children had shown significant behavioral improvements while in the Department's care. Anne Sharp, the children's guardian ad litem, testified that she tracked Doe's progress for nearly two years of the case and witnessed the children in a variety of environments. Sharp explained that while she witnessed a trajectory of behavioral improvements in other foster homes, the current foster parents were proactive, engaged, and attuned to the children's needs, and the children made significant improvements while in their care. She explained the children were doing the best she had ever seen them do; they were emotionally regulated, stable, well-behaved, and grounded. Sharp also testified that the children's

5

speech and communication in general had improved and they were no longer as physically aggressive with each other as they had been in the past.

Similarly, Rosa Paz, the current case manager for the Department, testified that during the eight months she had been assigned to the case, she witnessed improvements in the children's behavior. She specifically explained that she had seen "significant" improvements in B.G.'s behavior and, while L.W. still demonstrated some attachment issues, she had become more developmentally on track. Jessica Adamson, a social worker with the Department, who was the assigned case manager for the case from August 2021 through January 2022, also testified that she had seen the children's behavior improve while they were in care.

Additionally, Jeremy Schorzman, the children's current foster dad, testified the children presented some behavioral issues when they first came into his home in late February 2022, including attachment issues to other people and aggression towards each other. While these behaviors had improved, Schorzman testified that the behavioral issues would escalate after visitations with Doe. Schorzman explained that after visitations, L.W. would become very "clingy" to him and his wife and "more grumpy" towards B.G.; B.G. would become more aggressive towards L.W. and would be upset if L.W. received attention from him and his wife. Further, he testified that after visitations with Doe, the children were less willing to listen and would often scream and cry. However, when the children went through periods without visitations, the children's behavioral issues diminished significantly. Accordingly, substantial and competent evidence supports the magistrate court's finding that the children showed significant improvements while in foster care.

Second, multiple witnesses testified that the children needed safety and stability and that over the two years of the case, Doe had demonstrated she was incapable of providing this level of care. Sharp testified that the children needed a safe and stable home environment and she did not believe Doe could provide such an environment or had the ability to meet the children's needs. Sharp testified that over the two years of the case, the children had already waited beyond what was normal and reasonable for their parents to improve; Doe could not become an adequate parent until her additional issues were under control; and ultimately, it is in the best interests of the children for Doe's parental rights to be terminated.

The two case managers for the Department expressed similar concerns and conclusions. Adamson testified that at the point when she handed the case to another case manager, she believed

6

that termination of Doe's parental rights is in the best interests of the children because Doe had made no progress with the case plan, constantly missed visitations, and showed a lack of engagement in drug treatment and testing. Adamson felt that Doe had not made any significant changes in her life that would warrant the children being returned to her care. Paz testified that Doe was previously subject to a child protection case with the same underlying concerns which resulted in the termination of her parental rights to two other children. Paz explained that despite ample opportunities to engage in services that went beyond what the Department normally provides, including five referrals to nurturing parenting classes and multiple in-patient and out-patient treatment centers, Doe continued to have issues with her sobriety. Paz concluded that Doe had attempted treatment more times than most but had not managed to achieve sobriety. As such it would be a disservice for the children to continue to wait for Doe to achieve and maintain sobriety and, thus, termination of Doe's parental rights is in the best interests of the children.

Angie Thornton, the visitation supervisor, testified that she did not feel that Doe is capable of caring for the children for more than a very limited period of time. She explained that during visitations, Doe did not have control over her children, did not impose any consequences for poor behavior, favored B.G. over L.W., and often instructed L.W. to go to the visitation tech for care. Further, Thornton expressed that during at least one visit a month, Doe's behaviors raised concern that she was under the influence of substances, including a visit as recent as July 2022.

Finally, Doe testified that she relapsed in her sobriety at multiple points throughout the proceeding and expressed ignorance as to some basic components of her ability to provide for the children if returned to her care. First, Doe testified that despite her methamphetamine use while pregnant, her daughter was "very healthy," but Doe acknowledged her use could have a negative impact on the child's health. While Doe stated that she was sober at the time of the termination trial, she also testified that she had relapsed after her visitations with the children transitioned to unsupervised and she had not participated in any drug testing since March 2022. Second, Doe testified that she was currently employed, but she had not yet received a paycheck and did not know what her income would be. Doe further testified that although she receives some housing assistance, she did not know how her utilities were paid. Taken together, there is substantial and competent evidence to support the magistrate court's finding that Doe was unable to provide the level of care, safety, and stability the children need.

Substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children because the children improved while in foster care and Doe is unable to provide the level of care, safety, and stability the children need. Accordingly, the magistrate court did not err.

## IV.

## CONCLUSION

The magistrate court's finding that Doe neglected the children is affirmed on the uncontested basis. Additionally, substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.